NOTICE

Decision filed 02/01/21 The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2021 IL App (5th) 200279-U

NOS. 5-20-0279, 5-20-0280, 5-20-0281

cons.

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| *In re* A.O., D.P., and N.F., Minors | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Marion County. |
| | ) | |
| Petitioner-Appellee, | ) | No. 20-JA-49 |
| | ) | No. 20-JA-50 |
| v. | ) | No. 20-JA-51 |
| | ) | |
| Carolene H., | ) | Honorable |
| | ) | Ericka A. Sanders, |
| Respondent-Appellant). | ) | Judge, presiding. |

_____

JUSTICE CATES delivered the judgment of the court.
Justices Welch and Wharton concurred in the judgment.

**ORDER**

¶ 1   *Held*:  The trial court's determination that the minors were neglected due to an injurious environment was not against the manifest weight of the evidence.

¶ 2   Respondent, Carolene H. (Mother), appeals the judgment of the circuit court of Marion County adjudicating her minor children, A.O., D.P., and N.F., neglected due to an injurious environment. For the following reasons, we affirm.

¶ 3                                    BACKGROUND

¶ 4    Mother has three biological children: A.O. (born May 23, 2007), N.F. (born September 17, 2009), and D.P. (born December 27, 2010). The minors' putative fathers are not parties to this appeal.

¶ 5    On February 6, 2020, the Illinois Department of Children and Family Services (DCFS) received a hotline report alleging Mother was using methamphetamine and was homeless. The dispositional reports prepared by DCFS indicated that the children were living in an unstable home environment in the year preceding to the hotline call. The children reported to DCFS that they had witnessed domestic violence between Mother and her ex-boyfriend, C.M., including an incident that occurred in December 2019. The dispositional reports indicated that the family also experienced homelessness, which required the children to live with their maternal grandfather for period of time. All three of the children reported to DCFS that their grandfather abused alcohol and physically abused them, and that living conditions in his home were inadequate. The reports indicated that Mother seemed to have obtained some stability after the children returned from their grandfather's home in late December 2019 and before DCFS received the hotline report.

¶ 6    On February 7, 2020, a DCFS caseworker performed a home visit in response to the hotline call. During the visit, Mother refused to take a drug test and refused DCFS's offer to provide Mother with services. On March 24, 2020, DCFS became aware that Mother was engaged in a relationship with A.D., and that they were residing together with the children. During a home visit that day, Mother and A.D. refused to complete a drug test

even after being advised that failure to do so would result in the children being taken into protective care. The dispositional report indicated that DCFS took the children into protective custody that day due to Mother's "history of instability, drug allegations and engaging in relationships with men where domestic violence and drug use [was] present."

¶ 7    On March 27, 2020, the State filed a petition for adjudication of wardship for each of the children alleging the minors were neglected pursuant to section 2-3(1)(b) of the Juvenile Court Act of 1987 (Act) (705 ILCS 405/2-3(1)(b) (West 2018)), in that their environment was injurious to their welfare. The petitions alleged that (1) Mother had a history of substance use, which made her unable to safely care for the minors, (2) Mother had moved from home to home, at times being homeless, and (3) Mother had allowed domestic violence to occur in the presence of the children. A shelter care hearing was held the same day. Following the hearing, the trial court found there was probable cause to believe the children were neglected as defined by the Act. The children were removed from Mother's custody, and temporary custody was given to DCFS.

¶ 8    On July 22, 2020, the court conducted an adjudicatory hearing on the neglect petitions. At the hearing, the State presented the testimony of A.O., aged 13, and N.F., aged 10, about Mother's relationship with C.M. A.O. testified that he did not know how long C.M. and Mother dated, but that he believed C.M. lived with the family for "almost a year" before Mother broke up with him. C.M. lived with the family before the children went to live in Arkansas with their grandfather and also after the children returned from Arkansas. A.O. testified C.M. and Mother would fight every few days, or approximately three times a week. During the fights, Mother and C.M. would yell and "hit each other." A.O. testified

3

when Mother and C.M. fought, A.O. would move N.F. and D.P. into a different room to keep them from seeing the fighting. A.O. stated the fighting made him feel worried and upset. A.O. testified he once tried to stop C.M. from hitting Mother, and C.M. "put his hands around" A.O.'s throat. Mother pulled C.M. off of A.O., and C.M. went back to hitting Mother.

¶ 9 N.F. testified that C.M. and Mother would "sometimes *** fight a lot" but that "[i]t didn't happen that much." N.F. stated that C.M. would yell at Mother and that he would hit Mother "sometimes." N.F. testified he did not like living with C.M. because C.M. was mean to them and yelled at them. N.F. testified everyone was happy after C.M. moved out of the home.

¶ 10 At the adjudicatory hearing, the State acknowledged that it did not present any evidence supporting the allegations that the children's environment was injurious to their welfare based on Mother's substance abuse or homelessness. The State requested that the court find that the children were neglected, in that their environment was injurious to their welfare, because Mother allowed acts of domestic violence to occur in the presence of the children. Mother's counsel argued that the evidence indicated that the children were not in an environment that was injurious to their welfare because Mother had broken off her relationship with C.M., the perpetrator of the domestic violence, before the State filed the petitions.

¶ 11 On July 22, 2020, the court granted the State's petitions and adjudicated the children neglected. Based on the testimony of A.O. and N.F., the court found that Mother had allowed domestic violence to occur in the presence of the minors on multiple occasions,

4

and that A.O. was struck by C.M. while attempting to stop an assault upon Mother on one occasion. The trial court found that the children were neglected, in that the minors were in an environment that was injurious to their welfare, based on Mother allowing domestic violence to occur in the home when the children were present.

¶ 12 On September 2, 2020, the trial court conducted a dispositional hearing. At the hearing, the State submitted into evidence the dispositional reports and addendums produced by DCFS. The reports indicated that DCFS sometimes had difficulty contacting Mother, and that Mother had failed to complete requested drug testing. The reports indicated that Mother had repeatedly failed to appear for scheduled visits in the past, but had recently attended two visits, and that those visits had gone well.

¶ 13 DCFS recommended that Mother complete multiple services, including a substance abuse assessment, a mental health assessment, a psychiatric assessment, a domestic violence assessment, and parenting classes. The reports indicated that on August 24, 2020, the caseworker explained the recommended services to Mother, but that Mother refused to sign any consent forms or to participate in any services. DCFS also recommended that Mother address issues related to her housing and income. DCFS reported performing a home visit on June 24, 2020. During the visit, Mother indicated that she had turned the refrigerator off after the children were removed from the home because she did not keep any food in it. Although Mother had living room furniture, Mother had only a "mattress on the floor" for the children to sleep on if they were returned to her. Mother self-reported being employed; however, she did not provide DCFS with any documentation verifying her employment. DCFS also recommended that Mother follow up with her primary care

provider to receive appropriate care for a previously diagnosed medical condition because DCFS believed her condition may be contributing to Mother's substance abuse.

¶ 14    On September 9, 2020, the trial court entered dispositional orders finding that Mother was unable to care for the children, and that it was in the best interest of the children that they be removed from Mother's custody. The court adjudicated the children wards of the court and granted guardianship and custody of the children to DCFS.

¶ 15    Mother timely appealed from the trial court's orders.[1] On appeal, Mother argues the trial court's finding that the children were neglected minors was against the manifest weight of the evidence. We disagree.

¶ 16                                    ANALYSIS

¶ 17    The Act (705 ILCS 405/1-1 *et seq.* (West 2018)) sets forth a step-by-step process for deciding whether a child should be removed from his parents and made a ward of the court. *In re Arthur H.*, 212 Ill. 2d 441, 462 (2004). After a petition for wardship has been filed and the minor has been placed in temporary custody, the circuit court must make a finding that the child is abused, neglected, or dependent before it conducts an adjudication of wardship. 705 ILCS 405/2-21 (West 2018); *In re Arthur H.*, 212 Ill. 2d at 462.

¶ 18    A "neglected minor" includes any minor "whose environment is injurious to his or her welfare." 705 ILCS 405/2-3(1)(b) (West 2018). "Neglect" is generally defined as the "failure to exercise the care that circumstances justly demand." (Internal quotation marks omitted.) *In re Arthur H.*, 212 Ill. 2d at 463; *In re Zion M.*, 2015 IL App (1st) 151119, ¶ 24.

_____

[1]This court, on its own motion, has consolidated Mother's appeals for purposes of entering a disposition.

6

The meaning of the term "neglect" is fluid and encompasses both the willful and the unintentional disregard of parental duty. *In re Arthur H.*, 212 Ill. 2d at 463; *In re Zion M.*, 2015 IL App (1st) 151119, ¶ 24. An "injurious environment" is also an amorphous concept but is generally interpreted to include "the breach of a parent's duty to ensure a 'safe and nurturing shelter' for his or her children." *In re Arthur H.*, 212 Ill. 2d at 463; *In re Zion M.*, 2015 IL App (1st) 151119, ¶ 24.

¶ 19   The purpose of an adjudicatory hearing is to not determine whether the parent caused a minor's neglect but to determine whether the child is neglected because adverse conditions exist. *In re Arthur H.*, 212 Ill. 2d at 465-66. Determinations of neglect and injurious environment are fact-driven rulings, and these cases must be decided on their unique circumstances. *In re Arthur H.*, 212 Ill. 2d at 463. The State must prove the allegations of neglect or abuse by a preponderance of the evidence, meaning the State must establish that the allegations are more probably true than not. *In re Arthur H.*, 212 Ill. 2d at 463-64; *In re Zion M.*, 2015 IL App (1st) 151119, ¶ 23. On review, this court will not reverse the trial court's ruling on neglect unless it is against the manifest weight of the evidence. *In re Arthur H.*, 212 Ill. 2d at 464. A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident. *In re Arthur H.*, 212 Ill. 2d at 464.

¶ 20   If the State fails to prove the allegations of abuse, neglect, or dependence by a preponderance of the evidence, the circuit court must dismiss the petition. 705 ILCS 405/2-21(1) (West 2018). If the State satisfies its burden of proof, the court then proceeds to the second adjudicatory stage, in which the court determines whether "it is consistent with the

7

health, safety and best interests of the minor and the public that he be made a ward of the court." 705 ILCS 405/2-21(2) (West 2018).

¶ 21 On appeal, Mother argues that the trial court's finding of neglect was against the manifest weight of the evidence because it was premised upon conditions that Mother had already corrected. Mother argues that the uncontroverted evidence established that the circumstances surrounding the domestic violence had ceased because Mother no longer lived with C.M., the primary source of the violence. Mother also contends that the court's finding that Mother "allowed" domestic violence to occur in the home was unsupported by the record because the evidence indicated that Mother defended herself and A.O. against C.M.'s violent acts, that the physical violence only happened occasionally, and that Mother had broken off the relationship before the State initiated the proceedings. Mother asserts that the removal of the children is "tantamount to unintentionally punishing a victim of domestic violence."

¶ 22 Here, the trial court's finding that the children were neglected because their environment was injurious to their welfare was not against the manifest weight of the evidence. Contrary to Mother's assertions, A.O.'s testimony at the hearing supports a finding that domestic violence had been a common and persistent element in the children's living environment. The evidence was that the violence occurred as often as three times a week for almost a year, and that living in these conditions was upsetting and worrisome for the children. A.O., who was 13 years old at the time of the hearing, was so affected by the violence against Mother that he was compelled to both put himself in harm's way to try to stop it, and to physically move his younger siblings to another room in an attempt to shield

them from the sight of it. A.O.'s actions speak volumes, demonstrating his acute understanding that this behavior was damaging and potentially dangerous to everyone exposed to it. While Mother is undoubtedly also a victim, this fact does not diminish the reality that the children's environment was injurious to their welfare and that the condition persisted for an extensive period of time. See *In re A.D.R.*, 186 Ill. App. 3d 386, 391 (1989) (repeated physical abuse of someone other than the subject child creates an environment injurious to the minor's welfare).

¶ 23 This evidence of repeated domestic violence raises concerns about the minors' well-being while in Mother's care and was a breach of her duty to provide the minors with a safe and nurturing shelter. Based on the evidence presented, we find the trial court's determination that the minors were neglected was not contrary to the manifest weight of the evidence.

¶ 24                                   CONCLUSION

¶ 25 For the foregoing reasons, we affirm the judgments of the circuit court of Marion County.


¶ 26 Affirmed.